IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Jeffrey J. Dantzer, | Case No. 3:09 CV 2198 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Commissioner of Social Security, | |
| Defendant. | |

### INTRODUCTION

Plaintiff Jeffrey Dantzer timely filed a Complaint (Doc. No. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental social security income ("SSI") benefits. This Court has jurisdiction under 42 U.S.C. § 405(g).

This case was referred to Magistrate Judge Armstrong for a Report and Recommendation ("R&R") pursuant to Local Rule 72.2(b)(2). Following Defendant's Brief on the Merits (Doc. No. 20) and Plaintiff's Response (Doc. No. 23), the Magistrate recommended that the Court affirm the final decision of the Commissioner to deny Plaintiff's claim for DIB and SSI benefits (Doc. No. 24).

This matter is now before this Court on Objections to the R&R filed by Plaintiff (Doc. No. 25). Pursuant to *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's findings. For the reasons below, the Court adopts the recommendation to affirm the Commissioner's determination.

**BACKGROUND**

The R&R accurately recites the relevant factual and procedural background from the record, and this Court adopts them in their entirety (Doc. No. 24, at 2–19). Briefly, Plaintiff suffers from, among other things, carpal tunnel syndrome, right ulnar nerve palsy, and bilateral shoulder, arm, neck and lower back pain. He also has been diagnosed with borderline intellectual functioning and low reading skills (AR at 21).[1] Although he completed the twelfth grade, Plaintiff describes himself as functionally illiterate (AR at 760, 789). He previously worked as a janitor for I.B. Steel, and after one year was promoted to machine helper. He held that position for seventeen years until the plant closed in 2002 (AR at 764–65). In May and June 2004, Plaintiff was employed at Wonder Bread, but quit because he could not manipulate the large racks that housed baked goods (AR at 763).

In December 2004, Plaintiff filed for DIB and SSI benefits, each denied initially and upon reconsideration. In 2008, Defendant, represented by counsel, appeared before an administrative law judge ("ALJ"). During the hearing, the ALJ posed several hypotheticals to the vocational expert ("VE"), Amy Kutschbach, seeking representative examples of jobs with certain limitations, including simple, repetitive tasks, with few changes in the workplace, low stress and with only brief interactions with others. The ALJ also asked whether any jobs would support a sit/stand option -- that is, where an employee would be allowed to switch positions during the day from sitting to standing, and vice versa. The VE provided three examples that fit these limitations: wire cutter (DOT 731.687-038), stock checker (DOT 299.667-014) and cafeteria attendant (DOT 311.677-010) (AR at 806). Although

---

[1] Due to the size of the administrative record, it is not available in electronic form through CM/ECF; it is available only in hard-copy in the clerk's office (see Doc. No. 11). For clarity, all citations to the administrative record, including transcript pages, will be made to "AR".

the ALJ determined Plaintiff could not perform his past relevant work, he ultimately found Plaintiff was not disabled (AR at 33).

The Appeals Council denied Plaintiff's request for review, and he timely filed an action seeking judicial review of the Commissioner's final decision. The Magistrate issued an R&R (Doc. No. 24) recommending this Court affirm the Commissioner's decision to deny Plaintiff benefits. Plaintiff filed Objections to the R&R, making various challenges to the Magistrate's finding that the ALJ's determination as to the fifth step of the disability inquiry was supported by substantial evidence.

## STANDARD OF REVIEW

In reviewing the denial of DIB and SSI benefits, this Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 405(g)). Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Serv.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)).

Even if a preponderance of the evidence, or indeed substantial evidence, supports a claimant's position, this Court cannot overturn "so long as substantial evidence also supports the conclusion

3

reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). However, procedural errors can be a basis for overturning the decision of the Commissioner, even if that decision is supported by substantial evidence. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## STANDARD OF DISABILITY

Eligibility for DIB and SSI benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" under Social Security is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (definition used in DIB context); *see also* 20 C.F.R. § 416.905(a) (definition used in SSI context). In addition, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Walters*, 127 F.3d at 529 (citing 42 U.S.C. § 423(d)(2)).

The Commissioner's regulations governing the five-step evaluation of disability for DIB and SSI benefits are identical for the purposes of this Court's review, and are found at 20 C.F.R. §§ 404.1520 and 416.920, respectively:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

> 4. Determine the claimant's residual functional capacity and whether claimant can perform past relevant work.
>
> 5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Only if a claimant satisfies each element of the analysis, including the inability to do other work and the duration requirement, is he determined to be disabled. 20 C.F.R. § 416.920(4)(i)-(v); *see also Walters*, 127 F.3d at 529.

Under this five-step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five, in determining whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## DISCUSSION

Plaintiff seems to raise six objections to the R&R. These objections are not always well-articulated, at times leaving the Court flummoxed; however, they appear to primarily focus on the ALJ's reliance on the VE's opinions. Each objection will be addressed in turn.

**The "Sit/Stand" Option**

Plaintiff first objects to the Magistrate's recommendation that the ALJ did not violate Social Security Ruling 00-4p by incorporating a sit/stand option -- permitting Plaintiff to occasionally change positions throughout the workday from sitting to standing or vice versa -- into Plaintiff's disability determination. The VE testified that three jobs could be performed with a sit/stand option: wire cutter, stock checker and cafeteria attendant (AR at 806). The VE also testified that her opinions were consistent with the Dictionary of Occupational Titles ("DOT") (AR at 808).

On cross-examination, the VE conceded that the DOT does not account for a sit/stand option (AR at 819). Plaintiff argues this put the VE's testimony in conflict with the DOT, which the ALJ was required to resolve. Plaintiff contends that because the ALJ failed to do so, he could not rely on the VE's testimony.

An ALJ has a duty to fully develop the administrative record, and as part of that duty, "[w]hen a VE or VS [vocational specialist] provides evidence about the requirements of a job occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided by the DOT." SSR-004P, 2000 WL 1898704, at *4. If the evidence appears to conflict, then the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.* If, however, the VE fails to identify any such conflict, the ALJ has no responsibility to identify or resolve a conflict, unless it is otherwise apparent. *See Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008).

Here, the sit/stand option was initially introduced by the ALJ in a hypothetical (AR at 806), and the VE indicated her testimony was consistent with the DOT (AR at 808). On cross-examination, the VE conceded that the DOT does not account for a sit/stand option (AR at 819). However, the VE further testified that, based upon her own observations and research, the sit/stand option was available in those positions she believed Plaintiff could perform (AR at 820). The VE was permitted to rely upon her own experience, even if it in some way conflicted with the DOT. SSR 00-4p, 2000 WL 1898704, at *2 ("[e]vidence from VEs . . . can include information not listed in the DOT," including information available "from a VE's . . . experience in job placement or career counseling"). In her statement, the VE provided an explanation for the inconsistency, which is exactly what Plaintiff contends the ALJ failed to do. This was sufficient to develop the record on this point. *See Mejias v.*

6

*Comm'r of Soc. Sec.,* 2009 U.S. Dist. LEXIS 22516, at *7–8 (N.D. Ohio 2009) (finding that, although the ALJ technically bore the burden of asking the VE whether his conclusion conflicted with the DOT, the Court saw "no reason to fault the ALJ just because [the plaintiff's] counsel asked the question first").

The ALJ also found, as required by SSR 00-4p, the VE's testimony was reasonable, "including her testimony regarding the effect of the sit/stand option, based on her experience in the vocational field, including her experience in forensic rehabilitation and her experience providing vocational counseling and rehabilitation" (AR at 33). Plaintiff's counsel stipulated to the VE's qualifications prior to her testimony (AR at 801), and with the exception of the sit/stand option, the VE indicated her testimony was otherwise consistent with the DOT (AR at 808). In sum, the ALJ's reliance on the VE's opinion on the sit/stand option was appropriate and complied with SSR 00-4p.

**Literacy Determination**

Plaintiff next argues the ALJ erred in finding Plaintiff has very limited reading ability, rather than functionally illiterate (AR at 31). Plaintiff contends the ALJ should have ordered further testing to confirm that Plaintiff's low intellectual functioning is a byproduct of his alleged illiteracy. The Magistrate found the ALJ's conclusion was supported by substantial evidence and this Court agrees.

The regulations define illiteracy as the "inability to read or write." 20 C.F.R. 404.1564(b)(1) The regulations further provide that "[w]e consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." *Id.*

The ALJ based his literacy determination on Plaintiff's own testimony that he can read "very little" and can write "a couple of things," though not "big words" (AR at 760–61). Plaintiff also

indicated in an initial interview he did not have any difficulties with reading (AR at 68) and could write more than his name in English (AR at 70, 761). Furthermore, Plaintiff is a high school graduate (AR at 760) who held semi-skilled jobs in the past. Based on this evidence, the ALJ found Plaintiff did not meet the definition of illiterate.

While there is record evidence suggesting Plaintiff is illiterate, this Court's obligation is to determine whether the ALJ's decision is supported by substantial evidence. *Jones*, 336 F.3d at 477. And while Plaintiff is unlikely to ever read the works of Mark Twain, Harper Lee or George Orwell, substantial evidence supports the ALJ's determination that Plaintiff has the ability to read.

Plaintiff's reliance on *Skinner v. Secretary of Health & Human Services*, 902 F.2d 447 (6th Cir. 1990), is misplaced. In *Skinner,* the plaintiff testified he only completed three grades and scored below a third grade reading level on the wide range achievement test ("WRAT"). *Id.* at 448. Despite this evidence, the ALJ determined the plaintiff had received a marginal education because he indicated on his disability application he had completed the eighth grade. *Id.* at 450–51. While Plaintiff is correct *Skinner* stands for the proposition that a person who reads below a third grade reading level is deemed "functionally illiterate," *id.* at 450, there has been no such determination here. Furthermore, the evidence in *Skinner* clearly contradicted the ALJ's conclusions, while in this case the ALJ's determination is supported by Plaintiff's own testimony, job history and school record.

**Plaintiff's Reasoning Ability**

Plaintiff's next objection is opaque, but he seems to argue that the ALJ's hypotheticals were too general with respect to reasoning levels because he used the limitation "simple, repetitive, routine tasks" (AR at 804). Plaintiff states that "[s]ome courts have held that this is ambiguous as to whether this is a level '1' or a level '2' reasoning" (Doc. No. 25, at 13). Plaintiff, however, fails to develop

8

this argument further or provide even a single citation to supporting authority. Therefore, this argument is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation omitted).

In any event, the ALJ properly took into account Plaintiff's mental limitations in finding he is not disabled. The ALJ based his determination on the opinions of two psychologists, Dr. Davis and Dr. Haskins, and to a lesser extent Plaintiff's treating physician, Dr. Darr. Dr. Davis and Dr. Haskins both noted Plaintiff held a job for twenty years and only left when the plant closed, not because of mental impairments (AR at 334, 360). When asked by Dr. Haskins why he felt he was disabled, Plaintiff indicated physical, not mental, concerns (AR at 360). Dr. Davis reported that Plaintiff could, despite his limitations, understand and follow simple instructions (AR at 334). Consistent with these reports, the ALJ found that Plaintiff has moderate difficulties with concentration, persistence or pace, and dealing with stress, but could still understand and follow simple instructions (AR at 25). During the administrative hearing, the ALJ asked the VE to provide representative occupations limited to, among other things, "simple, repetitive, routine tasks," (AR at 804–05), and the VE opined Plaintiff could perform the work of a wire cutter, stock checker and cafeteria attendant (AR at 806).

In determining Plaintiff's mental residual functional capacity, the ALJ limited Plaintiff to simple, repetitive, routine tasks with only few, if any, changes in the workplace setting; no fast-paced or strict production requirements; only brief and occasional interactions with others; and no jobs where reading was an essential part of the job (AR at 26). These limitations were consistent with the

9

medical evidence and were provided to the VE. The ALJ's conclusion that Plaintiff could perform light work with these limitations is supported by substantial evidence.

### The ALJ's Hypotheticals

Plaintiff next argues that the ALJ improperly relied on the VE's testimony in determining that Plaintiff was not disabled because the hypotheticals posed to the VE, and subsequently adopted as Plaintiff's residual functional capacity, did not take into account the full extent of his limitations.

The Magistrate found that the ALJ's hypotheticals included a limitation for "moderate difficulties in social functioning" (Doc. No. 24, at 26). Plaintiff strenuously objects to this conclusion, arguing that the ALJ's hypotheticals contained no such limitation; however, Plaintiff's objection is overblown. Although the ALJ did not use the same phrase as the Magistrate, he clearly included a social limitation in his hypothetical when he restricted the VE's opinion to jobs with "only brief and occasional interactions with others" (AR at 804), a limitation that is consistent with the medical evidence (AR at 334).

Plaintiff further argues the ALJ's hypothetical questions did not accurately portray Plaintiff's limitations in concentration, attention, stress or limited intellect. The Magistrate found the ALJ's hypotheticals lacked these limitations, but concluded the ALJ's findings were nonetheless reflective of these limitations (Doc. No. 25, at 13). Plaintiff maintains this is error because the ALJ could not rely on the VE's testimony without first providing an accurate hypothetical. Plaintiff is correct that, to rely on the VE's opinion testimony as substantial evidence, an ALJ must posit a question that "accurately portrays [plaintiff's] individual physical and mental impairments." *Varley v. Sec'y. of Health & Human Serv.,* 820 F.2d 777, 779 (6th Cir. 1987). "However in formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible."

10

*Gant v. Comm'r of Soc. Sec.,* 2010 WL 1378427, at *3 (6th Cir. 2010) (citing *Stanley v. Sec'y. of Health & Human Serv.,* 39 F.3d 115, 118–19 (6th Cir.1994)).

The ALJ's hypotheticals required the VE to assume a person of claimant's age, education and work history who was "limited to simple, repetitive, routine tasks, only a few if any changes in the workplace setting, no fast paced or strict production requirements, only brief and occasional interactions with others, and finally, no jobs where reading would be an essential part of the job" (AR at 804). This summary adequately took into account Plaintiff's limitations. The ALJ did not need to give additional cognitive limitations, such as "functionally illiterate," because he clearly found that allegation was not credible. *See Gant,* 2010 WL 1378427, at *3.

Furthermore, on cross-examination, Plaintiff's counsel provided his own set of mental limitations to the VE, including moderate limitations in ability to perform activities within a schedule, being punctual and being able to complete tasks within time restrictions, ability to work with co-workers and the public without distracting them or being distracted by them, maintaining appropriate behavior, responding appropriately to changes in the work setting, being aware of normal hazards, traveling to unfamiliar places and setting realistic goals (AR at 813–14). Counsel then asked the VE if these limitations would affect her opinion about the ability of Plaintiff to perform the jobs she had previously provided. The VE responded that the only limitation that would limit performance was Plaintiff's inability to maintain production levels, but the jobs could otherwise be performed (AR at 814, 816).

The hypotheticals posed by the ALJ, as well as the questions posed by Plaintiff's counsel, sufficiently took into account Plaintiff's social and cognitive limitations. The ALJ was permitted to rely on the VE's testimony.

**Dr. Darr's Opinion**

Plaintiff contends the ALJ improperly discounted the opinion of Dr. Darr, Plaintiff's treating physician, in determining Plaintiff's mental residual functional capacity. The Magistrate found the ALJ provided sufficient reasons for discounting Dr. Darr's opinion (Doc. No. 24, at 28).

Generally, opinions of treating physicians are entitled to more deference that those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec*. 486 F.3d 234, 242 (6th Cir. 2007). In fact, if the opinion of the treating physician as to the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it will be accorded controlling weight. *Id.* When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

Not every contradictory medical opinion will trump a treating physician's opinion, but "[c]ontradictory evidence presented by a medical source with specialization is precisely the type of evidence qualified to rebut the presumption of controlling typically enjoyed by a treating physician's opinion." *Garland v. Comm'r of Soc. Sec.,* 2010 WL 3087464, at *9 (N.D. Ohio 2010).

Here, as to Plaintiff's physical impairments, the ALJ gave controlling weight to Dr. Darr's opinion, including his diagnosis and treatment for bilateral carpal tunnel syndrome, status pose release surgeries, right elbow ulnar nerve palsy, status post transpositions repair surgery, bilateral shoulder, arm, neck and low back pain, spondylosis/degenerative disc disease and bilateral should impingement (AR at 22; 384–432; 459–68; 673–76).

12

When it came to Plaintiff's mental assessment, however, the ALJ gave Dr. Darr's opinion less weight, and provided good reasons for doing so. Dr. Darr's mental functional capacity assessment is contradicted by the opinion of Dr. Davis, a licensed clinical psychologist who specializes in mental health issues. Furthermore, the ALJ stated Dr. Darr's own assessment was internally inconsistent with limited support. For example, Dr. Darr noted that Plaintiff had moderate limitations in working in coordination or proximity with others, yet also stated Plaintiff did not have significant limitations interacting appropriately with the general public.

In short, the ALJ found Dr. Darr's decision to be internally inconsistent, not well-supported and contradicted by the more recent evaluation of a mental health specialist. This explanation took into account the factors the ALJ was required to consider -- including the supportability of the medical opinions, nature of the treatment relationship, the specialization of the doctors and the point in time when these mental assessments were administered -- and is supported by substantial evidence.

### Available Jobs in the National Economy

Finally, Plaintiff attacks the VE's opinion as to the number of available jobs Plaintiff could perform in the national economy. The VE testified there were approximately 100–150 wire cutter jobs in the region where Plaintiff resides and 1,000 state-wide; 400–450 stock checker jobs regionally, and 9,000 state-wide; and 200–250 cafeteria jobs regionally and 15,000 state-wide (AR at 806). Plaintiff does not challenge the accuracy of these figures, but rather argues the VE was required to provide job numbers for the entire United States, not those for the region or state (Doc. No. 25, at 15).

Contrary to Plaintiff's assertions, the VE's numbers are not "bogus" (Doc. No. 25, at 15). The Social Security Act, as amended, provides that "work which exists in the national economy means work which exists in significant numbers *either* in the region where such individual lives *or* in several

13

regions of the country." 42 U.S.C. § 423(d)(2)(A) (emphasis added). The VE provided precisely the information Section 423(d)(2)(A) calls for -- regional job numbers -- and the VE was not required to provide more. *See Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (reversing summary judgment in favor of plaintiff and finding the ALJ's determination of more than 1,350 available jobs in the *regional* economy supported by substantial evidence).

## CONCLUSION

For the foregoing reasons, this Court determines that the ALJ based his decision on substantial evidence. This Court adopts the Magistrate's R&R to affirm the Commissioner's decision.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

March 24, 2011